## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 25 2020, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher L. Sanders,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 25, 2020<br><br>Court of Appeals Case No.<br>20A-CR-380<br><br>Appeal from the Marion Superior Court<br><br>The Honorable William J. Nelson, Judge<br><br>The Honorable Mark Renner, Magistrate<br><br>Trial Court Cause Nos.<br>49G18-1905-F6-19415, 49G18-1908-F6-30906 |

**Altice, Judge.**

# Case Summary

Christopher Sanders pled guilty to two counts of theft as Level 6 felonies, each under a separate cause number, and was sentenced to an aggregate sentence of two years in the Marion County Jail followed by one year on home detention. Sanders appeals, presenting the following two issues for our review:

> 1. Did the trial court abuse its discretion in refusing to consider Sanders's request for educational credit time?

> 2. Did the trial court abuse its discretion when it imposed public defender fees and drug and alcohol program fees?

We affirm.

# Facts & Procedural History

On May 17, 2019, the State charged Sanders with Level 6 felony theft in Cause No. 49G18-1905-F6-19415 (F6-19415). During the initial hearing, Sanders informed the court that he made $8.75 per hour and that he could not afford an attorney. In a request for a public defender filed the same day, Sanders indicated that he earned $350 per week. The trial court appointed counsel for Sanders but ordered him to pay a public defender fee of $100.

On August 7, 2019, the State charged Sanders with Level 6 felony theft in Cause No. 49G18-1908-F6-30906 (F6-30906). F6-19415 and F6-30906 were consolidated at the trial level and all subsequent hearings were held together. Sanders was also on probation in Cause No. 49G25-1804-F6-13402 (F6-13402), in which cause the State eventually filed a notice of probation violation.

During an October 2019 bond review hearing in F6-30906, Sanders informed the court that his rent was approximately $750 per month and that he had dependent children in the home.

[5] On January 16, 2020, Sanders pled guilty as charged in both F6-19415 and F6-30906 without the benefit of a plea agreement. Sanders also admitted that he was on probation in F6-13402 when he committed each theft offense, resulting in a violation of his probation. Magistrate Mark Renner accepted Sanders's guilty pleas and revoked his probation. The matter then proceeded to sentencing. In an off-record conversation prior to the sentencing portion of the hearing, which conversation was referenced on the record, defense counsel, the State, and Magistrate Renner discussed whether Sanders was entitled to credit time for his completion of various programs while he was incarcerated in the Marion County Jail.[1] On the record, Sanders provided descriptions of the programs he completed, which included Pinwheels for Prevention, a Victim Impact Panel, a Core Civic course on breaking habits, a Core Civic course on reentry, and Violence Free Living.

[6] In sentencing Sanders, the court specifically noted Sanders's completion of various programs while incarcerated and expressly stated that it was "tak[ing] that into account in imposing the sentence." *Transcript Vol. II* at 27. With regard to the sanction for the probation revocation, the court stated, "I'm

---

[1] Although there is no record of the conversation, in their respective briefs, Sanders and the State provide similar accounts as to the nature of the discussion that transpired off the record.

finding that the probation is revoked but I'm not going to impose a further sanction" despite the fact that Sanders was subject to 361 days of suspended time in F6-13402. *Id*. The court explained that it "took [Sanders's completion of programs] into account . . . and in fact, that was basically the reason why [the court] did away with the probation." *Id*. at 29-30. The court continued, "I thought that he had deserved [sic] some reward for everything that he had done and the efforts that he had made, and that reward was not imposing any probation time." *Id*. at 30.

[7] The court sentenced Sanders to 545 days executed in the Marion County Jail in F6-19415 and a consecutive 545-day sentence, with 180 days executed in the Marion County Jail and 365 days on home detention, in F6-30906. The court awarded Sanders credit for 266 days (which included 133 days of actual time served). The court found Sanders indigent for fines and costs but assessed a fee of $3 per day for home detention. Taken together, the sentencing orders indicate that Sanders is also required to pay a $400 fee for alcohol and drug programs, as well as the earlier-assessed $100 public defender fee.

[8] Magistrate Renner set a hearing for January 24, 2020, so Sanders could present his request for educational credit time to Judge William Nelson. Magistrate Renner explained:

> I'm going to [set the matter for hearing] because I've already considered it, I'm going to let another judge, Judge Nelson consider whether that might merit further consideration. It wouldn't be fair for [Sanders] to come in front of me again when I've basically already said I thought about it and gave him the

opportunity and the credit in not imposing a sanction from probation. But Judge Nelson might have a different approach, and I'll give him the opportunity to present that.

*Id.*

[9]  On January 24, 2020, Sanders appeared before Judge Nelson and requested educational credit time. In response, Judge Nelson stated, "That's not up to me to do that." *Id.* at 33. Sanders explained that he did not think he was able to earn credit for the programs he completed because they were not completed in the Department of Correction, but he thought the court might be able to exercise discretion to award credit regardless. Sanders acknowledged that Magistrate Renner had already taken his completion of the programs into consideration in determining his sentence. Judge Nelson responded, "[i]f it's already been considered, sir, I'm not going to reconsider it." *Id.* at 35. Judge Nelson then explained that completion of programs at the Marion County Jail did not give rise to educational credit time but noted that such could be considered in the imposition of a sentence. As an example, Judge Nelson offered, "say you could have gotten a five-year sentence, but the judge considered all you've accomplished in jail, and only gave you a three-year sentence. So it could be considered in that respect, but it cannot be used later on to gain additional credit." *Id.* at 36. Judge Nelson denied Sanders's request for educational credit time. The hearing before Judge Nelson lasted three minutes. Sanders now appeals. Additional facts will be provided as necessary.

# Discussion & Decision

Sentencing decisions are within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*.

## *1. Credit Time*

Sanders argues that the trial court abused its discretion in summarily denying his request for educational credit time. On appeal, he expressly states that he is "not asking this Court to determine the merits of whether he is entitled to educational credit time," rather, he is "only asking for the hearing on the merits in the trial court he was denied." *Appellant's Brief* at 11.

For the programs he completed, Sanders seeks educational credit time under Ind. Code § 35-50-6-3.3(b), which provides, in pertinent part:

> In addition to any educational credit that a person earns under subsection (a) [i.e., GED, high school diploma, degree from postsecondary institution], or good time credit a person earns under section 3 or 3.1 [i.e., jail time credit] of this chapter, a person *may* earn educational credit if, while confined by the department of correction, the person:
>
> (1) is in credit Class I, Class A, or Class B;
>
> (2) demonstrates a pattern consistent with rehabilitation; and

(3) successfully completes requirements for at least one (1) of the following:

> (A) To obtain a certificate of completion of a career and technical or vocational education program approved by the department of correction.

> (B) To obtain a certificate of completion of a substance abuse program approved by the department of correction.

> (C) To obtain a certificate of completion of a literacy and basic life skills program approved by the department of correction.

> (D) To obtain a certificate of completion of a reformative program approved by the department of correction.

> (E) An individualized case management plan approved by the department of correction.

(Emphasis supplied). While it is true that jail time credit is a matter of statutory right, and thus trial courts do not have discretion in awarding or denying such credit, an award of educational credit time under subsection (b) is not mandated. Indeed, the statute provides that such credit "may" be awarded if the statutory requirements are met. Sentencing decisions not mandated by statute are within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion. *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2001).

[13]     Here, Sanders was afforded not one, but two hearings regarding educational credit time. On January 16, 2020, Sanders presented his argument for educational credit time to Magistrate Renner. Sanders identified five programs he had completed while in the Marion County Jail and explained the content of those courses. Magistrate Renner clearly took Sanders's efforts into consideration when determining the sentence to impose, explaining "that was basically the reason why I did away with the probation," which decision essentially vacated 361 days of suspended time that could have been imposed for the probation violation. *Transcript Vol. II* at 30. Magistrate Renner made it clear that Sanders "deserved some reward for everything that he had done and the efforts that he had made, and that reward was not imposing any probation time." *Id*. at 30.

[14]     Despite the leniency afforded for his efforts, Sanders was given a second bite at the apple when he was provided the opportunity to again assert his request for educational credit time to Judge Nelson. Judge Nelson immediately recognized that Sanders's efforts had already been considered by Magistrate Renner and Judge Nelson explained that he was "not going to reconsider it." *Id*. at 35. Sanders has not provided us with any authority that he is entitled to another hearing, and we find the request unwarranted.

## 2. Fees

[15]     Sanders argues that the trial court abused its discretion in ordering him to pay certain fees. Sentencing decisions include decisions to impose fees and costs and the imposition of such is within the trial court's discretion. *Berry v. State*,

950 N.E.2d 798, 799 (Ind. Ct. App. 2011). "If the fees imposed by the trial court fall within the parameters provided by statute, we will not find an abuse of discretion." *Id.* (citing *Mathis v. State*, 776 N.E.2d 1283, 1289 (Ind. Ct. App. 2011)). "A defendant's indigency does not shield him from all costs or fees related to his conviction." *Banks v. State*, 847 N.E.2d 1050, 1051 (Ind. Ct. App. 2006), *trans. denied*.

[16]  First, Sanders argues that the trial court erred in ordering him to pay a $100 public defender fee under F6-19415 without first determining his ability to pay such fee. There are three statutory provisions that directly address the imposition of public defender fees, and the trial court can order reimbursement under any or a combination thereof. *Langdon v. State*, 71 N.E.3d 1162, 1164 (Ind. Ct. App. 2017). One such statute is Ind. Code § 35-33-7-6, which provides, in relevant part:

> (a) Prior to the completion of the initial hearing, the judicial officer shall determine whether a person who requests assigned counsel is indigent under section 6.5 of this chapter. If the person is found to be indigent, the judicial officer shall assign counsel to the person.
>
> * * *
>
> (c) If the court finds that the person is able to pay part of the cost of representation by the assigned counsel, the court shall order the person to pay the following:
>
> > (1) For a felony action, a fee of one hundred dollars ($100).

* * *

> (d) The court may review the finding of indigency at any time during the proceedings.

[17]     The second is found in Ind. Code § 33-40-3-6(a)(1), and it reads as follows:

> (a) If at any stage of a prosecution for a felony or a misdemeanor the court makes a finding of ability to pay the costs of representation under section 7 of this chapter, the court shall require payment ... of the following costs in addition to other costs assessed against the person:
>
>> (1) Reasonable attorney's fees if an attorney has been appointed for the person by the court.

The language of this statutory provision is similar to the language in I.C. § 35-33-7-6(c)(1). In both provisions, the trial court must find that the defendant has the ability to pay before it can impose a public defender fee.

[18]     The third is found in Ind. Code § 33-37-2-3(e), which provides as follows:

> (e) If, after a hearing under subsection (a) or (b), the court determines that a convicted person is able to pay part of the costs of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the person....

This is the only statutory provision requiring the trial court to conduct a hearing to determine if the defendant is indigent. In the previous two sections, the trial

court simply has to make a finding on whether the defendant can pay for part or all of his representation from a public defender

[19] While the trial court did not specifically state which statute it was relying upon when it ordered Sanders to pay the fee, it appears from the record that Sanders was ordered to pay pursuant to I.C. § 35-33-7-6(c). Indeed, the court imposed the specific monetary amount specified under I.C. § 35-33-7-6(c)(1), the order was made during the initial hearing immediately after the court found Sanders to be indigent and appointed counsel, and the sentencing order described the fee as a "Supplemental Public Defender Fee," which term this court has used when referring to the fee imposed under this statute.[2] *Appellant's Appendix Vol. II* at 16, 192.

[20] We have before noted with regard to imposition of a public defender fee under I.C. § 35-33-7-6 that there can be "degrees of indigency" and that "one may be indigent for purposes of paying private counsel thousands of dollars for representation, but still be able to pay a nominal amount to partially reimburse the costs of his appointed counsel." *Wooden v. State*, 757 N.E.2d 212, 281 n.4 (Ind. Ct. App. 2001), *trans. denied* (2002). To this end, we have interpreted I.C. § 35-33-7-6 to require that the trial court make a finding regarding a defendant's ability to pay. *See Berry*, 950 N.E.2d at 800 (concluding that $100 public

---

[2] *See Langdon v. State*, 71 N.E.3d 1162, 1164 (Ind. Ct. App. 2017) (observing that I.C. § 35-33-7-6(a) permits a trial court to "impose a *supplemental public defender fee* before completing the initial hearing) (emphasis supplied).

defender fee was imposed under I.C. § 35-33-7-6, which requires a finding by the trial court as to the defendant's ability to pay).

[21]     Here, during the initial hearing, the court inquired of Sanders if he was employed. Sanders answered in the affirmative and informed the court that he earned $8.75 an hour.[3] Immediately thereafter, the court found Sanders to be indigent, appointed him counsel, and ordered him to pay the $100 public defender fee. Implicit in this exchange is that the trial court determined that being employed, Sanders could offset a nominal amount of the costs of his public defender's representation. *See Cleveland v. State*, 129 N.E.3d 227, 238 (Ind. Ct. App. 2019) (holding that trial court did its due diligence by inquiring into defendant's financial abilities and made an implicit finding as to defendant's indigency status), *trans. denied*.[4]

[22]     Sanders also challenges the court's order that he pay a $400 fee for drug and alcohol programs. Ind. Code § 33-47-4-2(b)(2) permits the imposition of a drug and alcohol services program fee. County clerks in counties, such as Marion County, with established drug and alcohol services programs are permitted to collect such fees set by the court. By local rule, a substance abuse fee "*may* be waived by the court" if a defendant is determined to be indigent. Ind. Marion

---

[3] On a form requesting appointment of counsel, Sanders indicated that his weekly income was approximately $350.

[4] We note that it is better practice for a trial court to make express findings on the record regarding a defendant's ability to pay the fee as part of its indigency determination. *See id.* at n.10 (noting "it is still the better practice for trial courts to include an explicit indigency finding in their record").

Cir. & Super. Crim. Rule 115 (emphasis supplied). Sanders cites no statute or local rule that requires a trial court to waive drug and alcohol fees when a defendant is indigent. Sanders nevertheless argues that the trial court failed to exercise discretion in imposing the fee, believing it to be mandatory.

[23] During the sentencing hearing, the trial court provided Sanders with a home detention placement because of his substance abuse issues. The court stated:

> While on home detention, you talked about in your PSI, about needing help, about needing treatment. That's a condition of home detention, substance abuse treatment. You've got to, sir. You recognize you need it; you must do it. I'm also requiring mental health evaluation and treatment. You've acknowledged mental health problems; you've got to do it.
>
> * * *
>
> I want you to seriously, finally . . . take the opportunity both of those substance abuse and mental health evaluations and treatment, take advantage of that opportunity that I am giving you. The State argued that you didn't deserve opportunity on home detention. I disagree, that's why I am giving you this chance. I don't want to just warehouse you for basically three years. That's a waste, that's a waste.

*Transcript Vol. 2* at 28. The court then found Sanders indigent for fines and costs in both cases and ordered that he pay the administrative costs associated with the evaluations. The court told Sanders, "you've got to pay those." *Id.* It is this final statement that Sanders zeroes in on to support his argument that the court did not believe it had discretion to impose the $400 fee.

The court's statement in this regard should not be read in isolation. When read in context, the court's commentary does not show that the court thought it was compelled by law to impose the fees. Rather, the trial court chose to impose costs on Sanders. The trial court expressly found Sanders to be indigent for fines and costs in both cases, and yet still imposed the $400 fee. After imposing the fee, the court simply impressed upon Sanders the need to pay the fee that was ordered. Sanders has not established that the trial court's decision to impose the $400 program fee was an abuse of discretion.

Judgment affirmed.

Riley, J. and May, J., concur.